```
                                                ┌─────────────────────────┐
                                                │ USDC SDNY               │
                                                │ DOCUMENT                │
UNITED STATES DISTRICT COURT                    │ ELECTRONICALLY FILED    │
SOUTHERN DISTRICT OF NEW YORK                   │ DOC #:                  │
- - - - - - - - - - - - - - - - - - - - X       │ DATE:      5/19/10      │
                                      :         └─────────────────────────┘
ASTRAZENECA AB, AKTIEBOLAGET HÄSSLE, :
KBI-E INC., KBI, INC., and           :            00 Civ. 6749
ASTRAZENECA, LP,                     :            03 Civ. 6057
                Plaintiffs,          :
                                     :            Opinion & Order
          v.                         :
                                     :
MYLAN LABORATORIES INC., et al.,     :
                                     :
                Defendants.          :
- - - - - - - - - - - - - - - - - - - X
                                     :
IN RE OMEPRAZOLE PATENT LITIGATION   :            M-21-81 (BSJ)
                                     :            MDL Docket No. 1291
- - - - - - - - - - - - - - - - - - - X
```

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

On June 29, 2007, Mylan Inc. and Mylan Pharmaceuticals Inc. ("Mylan") moved under 35 U.S.C. § 285 for an award of attorneys' fees against Plaintiffs AstraZeneca AB, Aktiebolaget Hässle, KBI-E, Inc., KBI, Inc., and AstraZeneca, LP ("Astra").   On December 19, 2008, Astra moved to dismiss with prejudice Mylan's antitrust counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6).   For the reasons set forth below, Astra's motion to dismiss Mylan's antitrust counterclaims is GRANTED and Mylan's motion for attorneys' fees is DENIED.

## BACKGROUND[1]

On May 31, 2007, the Court ruled in its Second Wave decision that Mylan did not infringe the asserted claims of Astra's omeprazole patents (the formulation described in U.S. Patent Nos. 4,786,505 (the "'505 patent") and 4,853,230 (the "'230 patent")).  See AstraZeneca AB, et al. v. Mylan Labs., Inc., 490 F. Supp. 2d 381, 390 (S.D.N.Y. 2007).  This decision was affirmed on appeal by the United States Court of Appeals for the Federal Circuit.  See In re Omeprazole Patent Litig., Nos. 2007-1476, 2007-1477, 2007-1478, 2008 WL 2369864 (Fed. Cir. June 10, 2008).  After the Court's Second Wave decision, Mylan moved for attorneys' fees pursuant to 35 U.S.C. § 285, claiming that Astra's patent infringement suit was entirely devoid of merit.

In addition, in its Answer to Astra's Second Amended Complaint, Mylan asserted, inter alia, counterclaims for treble damages under the antitrust laws ("antitrust counterclaims").  AstraZeneca AB, 490 F. Supp. at 397.  The antitrust counterclaims assert that Astra kept generic manufacturers of omeprazole products off the market by bringing sham patent litigation to forestall generic-product launch.  These counterclaims were severed and stayed pending resolution of the

---

[1] For a more complete recitation of the facts and procedural history of this case, the reader is directed to the Court's decision dated May 31, 2007.  See AstraZeneca AB, et al. v. Mylan Labs., Inc., 490 F. Supp. 2d 381 (S.D.N.Y. 2007).

allegations of the complaint.  Id.  Astra has now moved to dismiss with prejudice the antitrust counterclaims.

## LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint that fails to state a claim upon which relief may be granted. "In ruling on a motion to dismiss for failure to state a claim upon which relief may be granted, the court is required to accept the material facts alleged in the complaint as true."  Frasier v. Gen. Elec. Co., 930 F.2d 1004, 1007 (2d Cir. 1991).  The court is also required to read a complaint generously, drawing all reasonable inferences from its allegations in favor of the plaintiff.  See California Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 515 (1972).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations marks, alterations and citations omitted). Instead, a plaintiff must assert "enough facts to state a claim to relief that is plausible on its face."  Id. at 570.  "A claim

3

has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. ---, 129 S. Ct. 1937, 1940 (2009).

In deciding a motion to dismiss under Rule 12(b)(6), the court may refer "to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." Brass v. Am. Film Tech., Inc., 987 F.2d 142, 150 (2nd Cir. 1993) (citation omitted); see also Hayes v. Coughlin, No. 87 Civ. 7401, 1991 WL 220963, at *1 (S.D.N.Y. Oct. 16, 1991) ("Papers outside a complaint may be incorporated by reference into the complaint when such papers are referred to within the body of the complaint.").

## DISCUSSION

### I. Antitrust Counterclaims

Mylan brings four antitrust counterclaims: monopolization in violation of § 2 of the Sherman Act, 15 U.S.C. § 2; attempted monopolization in violation of § 2; combination and conspiracy to monopolize in violation of § 2; and combination and conspiracy in restraint of trade in violation of § 1 of the

4

Sherman Act, 15 U.S.C. § 1. The four predicate acts underlying the counterclaims are the same:

> (1) Astra sued every potential generic competitor (including Mylan) without regard for the merits, (Mylan's Answer and Counterclaims §§ 137, 144-46, 156, 166, 175, 186-88, 200-01);
>
> (2) Astra improperly listed certain Prilosec® patents in the Orange Book, either because the patents were invalid or because they did not meet the statutory requirements, (Mylan's Answer and Counterclaims §§ 141-42);
>
> (3) Astra attempted to (i) convert sales of Prilosec® to Nexium® by pressuring physicians and by aggressive direct-to-consumer advertising, thereby replacing revenue that would otherwise have gone to suppliers of generic omeprazole products, and (ii) convert sales of prescription omeprazole to an over-the-counter omeprazole product (Prilosec® OTC) before substantial or additional generic competition to Prilosec® could occur, (Mylan's Answer and Counterclaims §§ 189-90); and
>
> (4) Astra's alleged activities abroad were aimed at excluding both generic firms and parallel traders from competing against AstraZeneca's Losec® product (Mylan's Answer and Counterclaims §§ 138, 192).

Mylan alleges that Astra committed these acts to unlawfully perpetuate its monopoly power in the U.S. market, which Mylan defines as "omeprazole-based drugs, which consists of Prilosec® and generic omeprazole products" or, alternatively, "Nexium® (esomeprazole) in addition to Prilosec® and generic omeprazole products." (Mylan's Answer and Counterclaims §§ 193, 203.)

In Counts III and IV, Mylan alleges that Astra, Merck & Co., Inc., and Procter & Gamble combined and conspired to delay and prevent generic competition in the relevant market. (Mylan's Answer and Counterclaims §§ 214, 221.) The alleged

overt acts in furtherance of the conspiracy are predicate acts (1) and (3), supra.

With respect to predicate act (1), Astra responds that under the Noerr-Pennington doctrine, Astra's patent infringement action against Mylan cannot give rise to antitrust liability because Astra's suit was not a sham--i.e., Astra's claims were supported by probable cause.

"Generally, under the Noerr-Pennington doctrine, citizen petitions are immune from antitrust liability in light of the First Amendment." In re DDAVP Direct Purchaser Antitrust Litig., 585 F.3d 677, 685-86 (2d Cir. 2009) (internal quotation marks and citations omitted). Noerr-Pennington immunity extends to those who petition all types of government entities, including the courts. California Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 510-11 (1972).

There is an exception to Noerr-Pennington immunity if the litigation, ostensibly directed toward influencing governmental action, "is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc., 365 U.S. 127, 144 (1961). There are two types of "sham" lawsuits. When it is alleged that a single action amounts to sham petitioning, a plaintiff must show that the litigation in question is (i) "objectively baseless,"

6

i.e., "no reasonable litigant could realistically expect success

on the merits"; and (ii) "an attempt to interfere directly with

the business relationships of a competitor through the use of

the governmental process--as opposed to the outcome of that

process--as an anticompetitive weapon." Professional Real

Estate Investors, Inc. v. Columbia Pictures Indus., 508 U.S. 49,

60 (1993) ("PRE") (citations, internal quotation marks, and

alterations omitted). "Only if challenged litigation is

objectively meritless," i.e., (i), "may a court examine the

litigant's subjective motivation," i.e., (ii). Id.

     By contrast, when a defendant is accused of bringing "a

whole series of legal proceedings" indiscriminately--known as

automatic petitioning--the test is: "Were the legal filings

made, not out of a genuine interest in redressing grievances,

but as part of a pattern or practice of successive filings

undertaken essentially for purposes of harassment?" Primetime

24 Joint Venture v. Nat'l Broadcasting, Co., Inc., 219 F.3d 92,

101 (2d Cir. 2000) (internal quotation marks and citations

omitted). In automatic petitioning cases, "[i]t is immaterial

that some of the claims might, as a matter of chance, have

merit.  The relevant issue is whether the legal challenges are

brought pursuant to a policy of starting legal proceedings

without regard to the merits and for the purpose of injuring a

market rival." Id. (internal quotation marks and citations omitted).

The Court finds that Astra is entitled to Noerr-Pennington immunity from antitrust liability arising from its patent infringement action against Mylan because the suit was not a sham. Mylan alleges that when Astra filed its infringement action (and at various points thereafter), Astra knew or should have known that Mylan's product did not infringe the asserted patents, yet Astra pursued the lawsuit to prevent or delay Mylan's entry to the relevant market. However, as explained infra, the Court cannot conclude that Astra's infringement action against Mylan was one for which "no reasonable litigant could realistically expect success on the merits." PRE, 508 U.S. at 60.

First, an unsuccessful lawsuit, without more, is not a sham. See id. at 61 n.5 ("[W]hen the antitrust defendant has lost the underlying litigation, a court must resist the understandable temptation to engage in post hoc reasoning by concluding that an ultimately unsuccessful action must have been unreasonable or without foundation."). This Court may not infer automatically that Astra's infringement action against Mylan was objectively baseless just because Astra lost at trial.

Second, this Court denied Mylan's motion for summary judgment of non-infringement, ruling that there were genuine

issues of fact as to whether Mylan infringed Astra's patents.
While surviving summary judgment may not establish conclusively
that a suit is not a sham, it provides strong evidence that
Astra could have reasonably expected success on the merits.
See, e.g., Sulzer Textil A.G. v. Picanol N.V., 358 F.3d 1356,
1370 (Fed. Cir. 2004) (agreeing with district court's reasoning
that "because Sulzer's claims survived Picanol's motion for
summary judgment, Sulzer's claims could not be considered
baseless"); ADT Sec. Sys., Inc. v. Guerra, No. 95-cv-1051, 1997
WL 114784, at *2 (D. Conn. Mar. 4, 1997) ("Here, the court has
concluded that ADT's claims are worthy of presentation to the
trier of fact and therefore cannot conclude that its lawsuit is
a sham.").

Third, at the outset of Astra's case, Mylan gave Astra an
objectively reasonable basis to sue: Mylan provided Astra notice
of its Paragraph IV certification.  This is an act of
infringement under 35 U.S.C. § 271(e)(2)(A).  See Celgene Corp.
v. KV Pharm. Co., No. 07-4819, 2008 WL 2856469, at *2-5 (D.N.J.
July 22, 2008) ("Because the Act has made the act of submitting
an ANDA itself an act of infringement," in a Hatch-Waxman ANDA
case the attorney need only "conduct a reasonable and competent
inquiry into the act of infringement by investigating whether a
relevant ANDA has been filed.").  The Court agrees with Astra
that a reasonable plaintiff in a Hatch-Waxman case would be

expected to know few details about the accused product at the outset of litigation and plaintiff's counsel may reasonably rely on discovery to learn the material details.

Finally, Astra's infringement action against Mylan was hard-fought and close. In its lengthy Second Wave decision-- issued after a 42-day bench trial--the Court ruled that Astra had proven that two of three contested limitations of its claims (limitations 1(b) and 1(c)) were found in Mylan's product. See AstraZeneca AB, et al. v. Mylan Labs., Inc., 490 F. Supp. 2d 381, 427-447 (S.D.N.Y. 2007). Mylan's invalidity defenses also failed. Id. at 397, 499. This outcome hardly bespeaks baseless litigation.

For all these reasons, the Court concludes that Astra's infringement action against Mylan was not objectively baseless and that it was therefore not a sham lawsuit unworthy of Noerr-Pennington protection.[2]

Mylan next argues that its antitrust counterclaims should not be dismissed because they fall within the automatic petitioning exception to Noerr-Pennington immunity. See Cal. Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 512-16 (1972) (holding that plaintiffs' allegations that defendants "instituted the proceedings and actions . . . with or without

---

[2] Because the Court does not find that the infringement action was objectively meritless, the Court need not examine Astra's subjective motivation in bringing the suit. See Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., 508 U.S. 49, 60 (1993).

probable cause, and regardless of the merits of the cases" "come
within the 'sham' exception [to Noerr-Pennington immunity]").
In connection with this, Mylan alleges that (1) "Astra and its
marketing partners engaged in an extensive multifaceted
worldwide campaign designed to maintain their market dominance
and monopoly beyond the legitimate scope of its patent
protection [by] filing and maintaining lawsuits against each and
every potential generic competitor without regard for the
merits," (Mylan's Answer and Counterclaims § 137), and (2)
"Astra and its U.S. marketing partner Merck & Co. . . . had a
policy of starting and maintaining legal proceedings [in the
form of patent infringement actions] against all competitors
(including Mylan) seeking FDA approval to enter the relevant
market without regard to the merits of those actions."   (Mylan's
Answer and Counterclaims § 187.)

        The Court first notes that it appears to be an open
question whether California Motor Transport's automatic
petitioning exception to Noerr-Penington immunity remains viable
following the Supreme Court's decision in PRE.   In PRE, the
Court observed that it had previously "described a sham as
evidenced by repetitive lawsuits carrying the hallmark of
insubstantial claims."   PRE, 508 U.S. at 58 (emphasis in
original, internal quotations omitted).   The PRE Court
ultimately rejected a "purely subjective definition of 'sham,'"

reasoning that "[s]ince California Motor Transport, we have consistently assumed that the sham exception contains an indispensable objective component." Id. at 58, 60 (emphasis added). The Supreme Court thus indicated that a sham must be, at minimum, objectively baseless. Yet the automatic petitioning exception to Noerr-Pennington immunity would apply even where a defendant's allegedly indiscriminate litigation campaign occasionally is successful, i.e., where some portion of the lawsuits are meritorious and thus, objectively justified. See Primetime 24 Joint Venture, 219 F.3d at 101 (explaining that in automatic petitioning cases "[i]t is immaterial that some of the claims might, as a matter of chance, have merit"). Because PRE indicates that a sham must be objectively baseless, and because this Court has concluded that Astra's infringement action against Mylan was not objectively baseless (and indeed, many of Astra's suits against other generic manufacturers of omeprazole were not objectively baseless because they succeeded), it may be that the automatic petitioning exception cannot strip Astra of Noerr-Pennington immunity for its patent enforcement efforts.

Nevertheless, even if automatic petitioning remains a viable exception to Noerr-Pennington immunity where litigation has an objective basis, the Court finds that Mylan's allegations fail to plausibly allege that Astra engaged in automatic petitioning. Astra had considerable success against the generic

12

manufacturers it pursued through litigation. In fact, Astra succeeded against eight of eleven generic manufacturers--a .727 "batting average." See Kaiser Foundation Health Plan, Inc. v. Abbott Labs., Inc., 552 F.3d 1033, 1047 (9th Cir. 2009) (rejecting sham litigation claim against a Hatch-Waxman plaintiff that won seven of its seventeen suits where, in each of the ten losing cases, plaintiff had a "plausible" argument); see also USS-POSCO Indus. v. Contra Costa County Building & Constr. Trades Council, 31 F.3d 800, 811 (9th Cir. 1994) ("Given that the plaintiff has the burden in litigation, a batting average exceeding .500 cannot support" plaintiff's antitrust theory); In re Terazosin Hydrochloride Antitrust Litig., 335 F. Supp. 2d 1336, 1367 (S.D. Fla. 2004) ("Abbott succeeded on seven of the eleven lawsuits it filed: an impressive .636 batting average."). Moreover, although Astra initiated many lawsuits against generic manufacturers of omeprazole, "the volume of [Astra's] suits was dependent on the number of generic companies attempting to enter the [omeprazole] marketplace, a matter over which [Astra] had no control." Kaiser, 552 F.3d at 1047. Thus, the Court cannot conclude that Mylan has plausibly alleged that Astra brought its infringement actions pursuant to a policy of starting legal proceedings without regard to the merits and for the purpose of injuring market rivals. Therefore, the Court

finds no basis for withholding Noer-Pennington immunity from
Astra for Mylan's antitrust counterclaims.

The Court also finds that none of Astra's other predicate
acts alleged in the antitrust counterclaims violates the Sherman
Act.  In predicate act (2), supra, Mylan alleges that Astra
improperly listed certain Prilosec® patents in the Orange Book,
(Mylan's Answer and Counterclaims §§ 141-42), but these
allegations do not suggest how these listings were improper or
anticompetitive.  For example, Mylan does not identify which
patents were improperly listed, why those patents were invalid
at the time of listing, or how Astra failed to meet other
statutory requirements for Orange Book listing.  See generally
Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

As for Mylan's allegation in predicate act (3), supra (the
claim of predatory product replacement practices (Mylan's Answer
and Counterclaims §§ 189-90)), the Court finds that Mylan has
failed to plausibly allege "predatory or exclusionary acts or
practices that have the effect of preventing or excluding
competition within the relevant market," Morris Communcs. Corp.
v. PGA Tour, Inc., 364 F.3d 1288, 1294 (11th Cir. 2004), as
required to state a claim under § 2 of the Sherman Act, because
the alleged conduct--introducing new products--is generally
considered pro-competitive.  See Walgreen Co. v. AstraZeneca
Pharm. L.P., 534 F. Supp. 2d 146, 150-52 (D.D.C. 2008)

14

(rejecting antitrust theory that AstraZeneca engaged in exclusionary conduct by introducing Nexium, a drug alleged to be nearly identical to and no more effective than Prilosec, in order to avoid competition from generic manufacturers because AstraZeneca's actions allegedly increased consumer choice). Similarly, Mylan's allegation that Astra aggressively pressured physicians and persuaded consumers to convert sales of Prilosec® to Nexium® fails to "identif[y] any antitrust law that prohibits market switching through sales persuasion short of false representations or fraud, or any court that has identified such conduct as exclusionary for purposes of § 2 of the Sherman Act." Id. at 152.

In addition, Mylan's allegation that Astra took steps abroad to prevent competition with Prilosec® (predicate act 4, supra, (Mylan's Answer and Counterclaims §§ 138, 192)) fails to plausibly allege any "direct, substantial, and reasonably foreseeable effect" on U.S. commerce, as required by 15 U.S.C. §6a(1). See F. Hoffman-La Roche Ltd. v. Empagran S.A., 542 U.S. 155, 161 (2004); see generally Cantor Fitzgerald Inc. v. Lutnick, 313 F.3d 704, 709 (2d Cir. 2002) ("[W]e give no credence to plaintiff's conclusory allegations.") (internal quotation marks omitted).

Finally, the Court finds that Mylan's allegations in Counts III and IV of a combination and conspiracy between Astra, Merck

and Procter & Gamble to delay and prevent generic competition in the relevant market fail to state claims because they are based on predicate acts (1) and (3), supra, which the Court has already determined do not violate the Sherman Act. The Court agrees with Astra that even if the litigation alleged to be a sham was pursued jointly, it is not an antitrust violation as a matter of law if the Court finds the activity immunized by the Noerr-Pennington doctrine. See Khan v. iBiquity Digital, Corp., No. 07-0475, 2009 WL 102810, at *1 (2d Cir. Jan. 15, 2009) (ruling that the alleged conspiracy to engage in activity protected by Noerr-Pennington immunity fails to state a claim).[3]

For the foregoing reasons, Astra's motion to dismiss Mylan's antitrust counterclaims is GRANTED.

## II. Motion for Attorneys' Fees

---

[3] The Court also rejects Mylan's argument that dismissal of its antitrust counterclaims at this stage is not warranted because the counterclaims raise issues of fact requiring discovery--e.g., evidence of Astra's knowledge and motivations, policies and strategies related to its litigation efforts. Such evidence plainly goes to the subjective intent prong under PRE and, as discussed in footnote 2, supra, it is irrelevant because the Court concludes that Astra's infringement action against Mylan was not objectively baseless. Moreover, as is clear from the Court's dismissal of Mylan's antitrust counterclaims, Mylan has failed to cross the "threshold of plausibility" on its counterclaims to justify discovery. See Asahi Glass Co. v. Pentech Pharm., Inc., 289 F. Supp. 2d 986, 995 (N.D. Ill. 2003) (Posner, J.) ("[T]o avoid turning every patent case into an antitrust case, some threshold of plausibility must be crossed at the outset before a patent antitrust case should be permitted to go into its inevitably costly and protracted discovery phase. . . . [A]n infringement suit must be adjudged to be objectively baseless before it can be considered an unlawful method of competition; that is, the determination of whether such a suit is a sham depends not on what the patentee believes but on the nature of and the underlying merits of the patentee's case.") (emphasis added and internal quotation marks omitted).

16

In its motion for attorneys' fees, Mylan requests that the Court deem this case "exceptional" and award attorneys' fees and related expenses under 35 U.S.C. § 285 because Astra's patent infringement claims were entirely without merit. Specifically, Mylan asserts that Astra advanced numerous unfounded theories in support of its claim that Mylan's product contains an alkaline reacting compound ("ARC") in the form of alleged impurities. According to Mylan, this case should be deemed "exceptional" and fees should be awarded because "Astra's relentless pursuit of its claims against Mylan and Esteve for more than half a decade, despite [any supporting evidence], forced Mylan/Esteve to incur millions of dollars in attorneys' fees and expenses." (Mylan/Esteve's Motion for Attorneys' Fees 1-2).

The Patent Statute provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "Attorney fees are not to be routinely assessed against a losing party in litigation in order to avoid penalizing a party for merely defending or prosecuting a lawsuit, and are awarded to avoid a gross injustice." Revlon, Inc. v. Carson Products Co., 803 F.2d 676, 679 (Fed. Cir. 1986) (internal citations omitted). "The district court must determine whether the case is 'exceptional'; if it is, then it is within the court's discretion to award attorneys' fees to the prevailing party." J.P. Stevens Co.,

17

Inc. v. Lex Tex Ltd., Inc., 822 F.2d 1047, 1050 (Fed. Cir. 1987).  The party seeking attorneys' fees bears the burden to show that a case is exceptional by clear and convincing evidence.  Cambridge Prods., Ltd. v. Penn Nutrients, Inc., 962 F.2d 1048, 1050 (Fed. Cir. 1992).

        The Court finds that Mylan has failed to establish by clear and convincing evidence that this case is "exceptional" and Mylan is therefore not entitled to attorneys' fees and related expenses.  At bottom, Mylan's theory is that Astra should be liable for attorneys' fees because it ultimately lost its infringement claim against Mylan at trial.  As discussed supra, the Court has found that Astra had an objectively reasonable basis to sue Mylan for infringement and that its lawsuit was not a sham.  The same reasoning applies here.  For example, as in Sulzer Textil A.G. v. Picanol N.V., 358 F.3d 1356 (Fed. Cir. 2004), because Astra's action survived summary judgment, it is appropriate to conclude that it was not baseless, and thus, not exceptional for purposes of awarding attorneys' fees.  Id. at 1370.  And, as discussed, Astra's action against Mylan was hard-fought and close, necessitating a lengthy bench trial and a voluminous opinion.  Moreover, there is no basis to find that Astra committed any misconduct in its handling of this litigation.  Simply put, there was no bad faith, inequitable conduct, or vexatious activity by Astra.  See Cambridge Prods.,

962 F.2d at 1050-51 ("In the case of awards to prevailing accused infringers . . . 'exceptional cases' are normally those of bad faith litigation or those involving fraud or inequitable conduct by the patentee in procuring the patent.").

For these reasons, Mylan's motion for attorneys' fees and expenses is DENIED.

## CONCLUSION

For the reasons set forth above, Astra's motion to dismiss Mylan's antitrust counterclaims is GRANTED and Mylan's motion for attorneys' fees is DENIED.

**SO ORDERED:**

Barbara S. Jones
UNITED STATES DISTRICT JUDGE

Dated:    New York, New York
          May 19, 2010

19